**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TV TOKYO CORPORATION, | |
| Plaintiff, | Case No. 26-cv-1230 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

**<u>COMPLAINT</u>**

Plaintiff, TV Tokyo Corporation ("Plaintiff" or "TV TOKYO") by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and the goodwill associated with Plaintiff's valuable intellectual property by selling and/or offering for sale unauthorized, unlicensed, and infringing products bearing Plaintiff's federally registered trademarks and copyrights (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth on Schedule "A" hereto (collectively, the "Seller Aliases"). As set forth below, Defendants, without authorization, are using Plaintiff's federally registered trademarks and copyrights by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling Infringing Products bearing unlicensed and infringing versions of Plaintiff's trademarks and copyrights. Additionally, Defendants are also

1

liable for contributory infringement as they knowingly induce, cause, or materially contribute to the infringing conduct of others by providing means and platforms for the sale and distribution of Infringing Products. Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's trademarks and copyrights, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's trademarks and copyrights; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1.      This action has been filed to combat online trademark and copyright infringers who trade upon Plaintiff's reputation, goodwill, and valuable intellectual property by selling and/or offering for sale Infringing Products bearing or using Plaintiff's federally registered trademarks and copyrights without authorization or authority to engage in such activities.

2.      TV Tokyo Corporation is a leading Japanese content producer and broadcaster of movies and videos with particular strength in animation and is headquartered at Roppongi Grand Tower, 3-2-1 Roppongi, Minato-ku, Tokyo 106-8007 Japan. Plaintiff develops, markets, and distributes NARUTO-branded television series and theatrical films worldwide and globally manages the licensing of NARUTO-branded products and services worldwide, having been appointed to do so exclusively by the manga series publisher, Shueisha Inc. TV TOKYO generates substantial revenue through various channels, including its official NARUTO-related online platforms, such as  https://www.tv-tokyo.co.jp/anime/NARUTO/index2.html:

2



3.     TV TOKYO is the owner and sole rights holder in and to multiple works. Such works include three episodes of the hit NARUTO animated TV series, which features characters and elements unique to the NARUTO universe. TV TOKYO registered these works with the United States Copyright Office under registrations PA-2-277-887, PA 2-431-062, and PA-2-276-002 (collectively, the "Copyrighted Works").

| Plaintiff's Registered Works | |
| --- | --- |
| **Title of Work** | **Screenshots That Contain Certain Iconic Elements** |
| NARUTO (#353): The Tale of Jiraiya the Gallant<br><br>**Reg number**<br>(PA 2-276-002)<br><br>**First Published**<br>(October 29, 2009) |  |

4

| | Plaintiff's Registered Works |
|---|---|
| **Title of Work** | **Screenshots That Contain Certain Iconic Elements** |
| NARUTO (#114): Good-Bye Old Friend…!I'll Always Believe You!<br><br>**Reg number**<br>(PA 2-277-887)<br><br>**First Published**<br>(December 15, 2004) |  |

NARUTO Enter: Naruto Uzumaki!

**Reg number**
(PA 2-431-062)

**First Published**
(February 15, 2007)



4.      True and correct copies of the registration certificates for the Copyrighted Works are attached as Exhibit 1.

5.      Plaintiff TV TOKYO is also the exclusive licensee of U.S. Trademark Registration Nos. 3,229,574 and 3,726,754 (the "NARUTO Marks").

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| NARUTO | 3,726,754 | For: Pre-recorded motion picture films and television programs featuring animated performances recorded on video and audio discs, and DVDs; pre-recorded video and audio discs, and DVDs, all featuring music and animated performances; musical video recordings and musical sound recordings featuring music and animated performances; computer game software; pre-recorded video and audio discs, DVDs featuring games; video game software; downloadable game software; downloadable computer games; computer game software and manuals sold as a unit; interactive video game programs; video game software; interactive computer game programs; software for playing video games; computer video game software and manuals sold as a unit; interactive entertainment software for playing video games; downloadable computer game software; downloadable interactive entertainment software for playing computer games in Class 009. |
| | | For: Publications, namely, graphic novels, fiction books, comic books, comic magazines, magazines related to animated fiction, art books, children's books, children's story books, coloring books, and printed instructional manuals and strategy guides in the field of animated entertainment and computer games; school and office supplies, namely, pens, pencils and markers; calendars; notebooks; posters; school and office supplies; stationery and stationery type portfolios; sticker books and stickers; trading |

7

| | | |
|---|---|---|
| | | cards; collectible cards; printed art scrolls in Class 016. |
| | | For: Men's, women's, and children's clothing, namely, shirts, t-shirts, sweatshirts, vests, wristbands; outerwear, namely, jackets, gloves; headwear, namely, hats, caps, head bands; neckwear; loungewear, namely, pajamas, nightshirts; undergarments, namely, underwear and boxer shorts; masquerade costumes, masquerade costumes with masks sold in connection therewith in Class 025. |
| | | For: Toys, namely, play figures and accessories therefor, toy action figures and accessories therefor, toy figures, toy statuettes and toy figurines made of molded plastic, cases for play accessories, mechanical action toys, dolls and accessories therefor, doll play sets, doll clothing and costumes, play sets for action figures, role-playing game sets, plush toys, stuffed toys, card games, collectable card games, playing cards, toy swords, target games, action skill games, collectable game cards and trading game cards in Class 028. |
| | | For: Entertainment services, namely, production and distribution of motion pictures, films and television programs, in the fields of animated entertainment; entertainment services, namely, distribution of animated audio-visual works via the internet and television; publication of books, magazines, cartoons, comic strips and comic books; fan club services; electronic game services provided on-line from databases or web sites on the Internet; providing online electronic publications, namely, newsletters, graphic novels, fiction books, and comic books, in the fields of comics, graphic novels, and animated entertainment; production of animated entertainment, namely, motion pictures and television programs; providing comics via the Internet; providing non-downloadable games via the Internet; providing information online regarding |

8

| | | animated entertainment, computer games and comics in Class 041. |
|---|---|---|
| NARUTO | 3,229,574 | Pre-recorded DVDs featuring animated performances, video game DVDs and video game discs in Class 009; Graphic novel, printed art scroll in Class 016; T-shirts, sweatshirts, jackets, headbands, caps, underwear, wristbands, gloves in Class 025. |

6.     The NARUTO Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the NARUTO Marks pursuant to 15 U.S.C. § 1057(b).

7.     True and correct copies of the registration certificates for the NARUTO Marks are attached as Exhibit 1.

8.     Plaintiff manufactures and sells products through its own online webstores and licenses the use of the NARUTO Marks and Copyrighted Works to a limited number of manufacturers of products that are sold online around the world (collectively, the "Plaintiff's Products"). After obtaining the trademark and copyright registrations and in the ordinary course of its business, TV TOKYO conducted an internet inquiry and discovered that the Defendants were selling Infringing Products that displayed the NARUTO Marks and Copyrighted Works, and were using Plaintiff's exclusive intellectual property to market and sell their Infringing Products, despite having no license or authorization to use the NARUTO Marks and Copyrighted Works.

9.     Upon information and belief, Defendants' infringing activities of offering for sale, marketing, and selling Infringing Products utilizing Plaintiff's NARUTO Marks and Copyrighted

Works arise from the same transaction, occurrence, or series of transactions or occurrences. Specifically, upon information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, upon information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or a coordinated scheme.

10.     Plaintiff has been and continues to be irreparably harmed by Defendants' infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained injury.

11.     Plaintiff therefore brings this action for federal copyright and trademark infringement pursuant to 17 U.S.C. § 501(a), et seq., 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the Copyright Act, 17 U.S.C. § 101, *et seq,* and the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.

### Personal Jurisdiction

13.     Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa.

Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat § 5322 (a). Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

14.     Although the Third Circuit has not yet considered specific jurisdictional arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at *13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the

United States. *Id.* at \*15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, Aliexpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), since they lack sufficient contact with any particular state and have not established which forum would be proper venue to bring suit. *Id.* at \*16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

15.     Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

16.     Upon information and belief, Defendants are and/or were systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites such as Amazon, Walmart, Temu and others (the "Third Party Platforms"), under the Seller Aliases, as well as any

and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

17.     Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ,in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

18.     Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

19.     Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

13

20.    Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

21.    Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet.

22.    Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By and through their infringing activities, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about this brand and products.

23.    Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

24.    Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

25.    Upon information and belief, Defendants are aware of Plaintiff's Products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

26.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) which authorizes civil actions to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.,* 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.,* Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc,* No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

27.    Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar patterns to Plaintiff's NARUTO Marks and Copyrighted Works but also the state in which Defendants were selling the Infringing Products - Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. Upon information and belief, as discussed above and shown in Plaintiff's presented evidence attached as Exhibit 3, each of the Defendants offer for sale products infringing upon Plaintiff's NARUTO Marks and/or Copyrighted Works to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrate that Defendants were and are offering for sale

and/or selling Infringing Products in this forum. This exemplary evidence is included in the table

below:





28. Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. *See Murphy*, 2021 U.S. Dist. LEXIS 17072 at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

29. Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other United States judicial district, as provided for in Section 1391(b)(3); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non-resident defendants may be sued in any judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.,* No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at *13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district).

30. Accordingly, venue is proper before this Court because a substantial part of events giving rise to Plaintiff's claims occurred in the district, because Defendants do not reside in any State and are thus statutorily subject to this Court's exercise of personal jurisdiction, or because Defendants are nonresidents of the United States.

31.     For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff TV Tokyo Corporation

32.     Plaintiff is a Japanese company whose primary business is the marketing and distribution of anime-related content. Plaintiff is the sole owner of the Copyrighted Works and exclusive licensee to the NARUTO Marks.  Plaintiff is the creator and seller of high-quality products, whose appearance and images associated with its advertising have been registered with the U.S. Trademark and Copyright Offices.

33.     The registrations for Plaintiff's NARUTO Marks and Copyrighted Works are valid and enforceable.

34.     The NARUTO Marks are distinctive when applied to Plaintiff's Products, demonstrating to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.

35.     Plaintiff's NARUTO Marks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and has been continuously used and never abandoned.

36.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and promoting Plaintiff's Products.

37.     The presence of Plaintiff's NARUTO Marks and Copyrighted Works increases the value of the Plaintiff's Products by increasing brand awareness and consumer confidence.

38. Plaintiff's NARUTO Marks and Copyrighted Works are intended to be used by Plaintiff to, among other things, market and advertise Plaintiff's Products, representing significant commercial value in the marketplace with the potential to generate millions of dollars.

39. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Works.

40. Plaintiff is widely advertising and promoting genuine Plaintiff's Products utilizing the NARUTO Marks and Copyrighted Works via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's Products. Similarly, Defendants' individual Seller Aliases are also indexed on the Third Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

41. Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of Infringing Products that incorporate the Copyrighted Works and by operating e-commerce stores using their respective

20

Store Names and Store IDs set forth on Schedule "A" hereto (collectively, the "Seller Aliases") that are targeted to and accessible by consumers in the United States.

42.    Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, when in fact they are actually selling inferior imitations of Plaintiff's Products.

43.    The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

44.    These similar elements between Defendants' respective Seller Aliases establish a logical relationship between them and suggests that Defendants' illegal operations arise out of the same transaction or occurrence, or series of transactions or occurrences.

45.    Defendants attempt to evade detection and avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, assisting others with opening new stores, and making subtle changes to their products. Further, many of the Third Party Platforms used by Defendants, including Amazon, Walmart, Temu and others, do not properly verify or confirm names or addresses used by operators of the stores, which allows counterfeiters to open as many stores as they can using any number of names.

46.    Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network.

47.     In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

48.     Plaintiff's business success and the worldwide popularity of the NARUTO brand has resulted in significant counterfeiting and other infringement of Plaintiff's NARUTO Marks and Copyrighted Works. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and when such activities are reported by consumers.

49.     Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial district and throughout the United States on Third Party Platforms such as Amazon, Walmart, Temu, and others.

50.     Defendants operate at least the Seller Aliases identified in Schedule A and engage in counterfeit use of Plaintiff's NARUTO Marks and Copyrighted Works, including offering for sale and selling Infringing Products which has caused and is continuing to cause irreparable harm to Plaintiff and its business.

51.     Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe mistakenly that Defendants are offering and selling authorized Plaintiff's Products when in fact they are not.

52.     Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as Exhibit 3.

53.     According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price

("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 2). Internet websites like the Seller Aliases are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See Combating Trafficking in Counterfeit and Pirated Goods*, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), Jan. 24, 2020, at 8).

54.     E-commerce retail platforms such as those used by Defendants do not subject new sellers to adequate verification and confirmation of their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

**The Scope of Defendants' Infringing Activities**

55.     Upon information and belief, each Defendant operates more than one merchant storefront.

56.     Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

**COUNT I**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)**

57.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

58.     Plaintiff's Copyrighted Works constitute creative, original works of authorship, fixed in a tangible medium of expression, and are protectable under U.S. copyright law. *See* 17 U.S.C. § 102. Plaintiff hereby verifies that the Copyrighted Works are original and not derived from any other copyrighted work without permission.

59.    Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyrighted Works.

60.    Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Works and has obtained valid copyright registrations for Plaintiff's Copyrighted Works. The copyright registrations precede the date of the alleged infringement which entitles Plaintiff to seek statutory damages and attorney's fees under 17 U.S.C. § 412.

61.    Defendants do not have any ownership interest in Plaintiff's Copyrighted Works and have no authority to create derivative works based on them.

62.    Defendants had access to Plaintiff's Copyrighted Works via the internet and elsewhere, as evidenced by their sophisticated business operations and the widespread nature of Plaintiff's Copyrighted Works, had actual knowledge of Plaintiff's copyrights before engaging in the infringing activities described herein.

63.    Without authorization from Plaintiff, the original creator of the Copyrighted Works, or any right under the law, Defendants have, *inter alia*, willfully copied, Plaintiff's Copyrighted Works, and reproduced, publicly displayed, and distributed, Infringing Products incorporating Plaintiff's Copyrighted Works, in connection with their operation of the Defendant Internet Stores.

64.    Defendants' Infringing Products incorporate works that are virtually identical to and/or are indistinguishably similar to Plaintiff's Copyrighted Works.

65.    Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyrights in Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5). Defendants had knowledge of the infringing activity and materially contributed to it by providing the means for others to infringe

24

Plaintiff's copyrights through their distribution and sale of Infringing Products. Moreover, Defendants' actions have enabled and facilitated direct infringement by third parties who purchase and use the Infringing Products. By providing the means and platform for this direct infringement, Defendants are secondarily and vicariously liable for contributory infringement, as established in *Leonard v. Stemtech Int'l, Inc*., 834 F.3d 376, 386 (3d Cir. 2016) citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). Their actions are inextricably linked to the underlying acts of direct infringement committed by the end-users of the Infringing Products.

66.    Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Works through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

67.    Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that use Plaintiff's Copyrighted Works without its permission.

68.    Defendants' infringement has been knowing, willful, intentional, malicious, and purposeful, and has been undertaken repeatedly in disregard of, and with indifference to, Plaintiff's rights. Any claim by Defendants of ignorance regarding the infringement is without merit, as the widespread nature of Plaintiff's Copyrighted Works and Defendants' sophisticated business operations make it implausible that Defendants were unaware of their infringing activities.

69.    Defendants, by and through their infringing activities, have caused financial injury to Plaintiff in an amount to be determined at trial.

70.    Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

**71.**    Considering the foregoing, and as contemplated by 17 U.S.C. § 503(b), Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's Copyrighted Works by Defendants.

**COUNT II**
**INFRINGEMENT OF A REGISTERED TRADEMARK**
**IN VIOLATION OF 15 U.S.C. § 1114**

72.    Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

73.    Plaintiff is the exclusive licensee of Plaintiff's NARUTO Marks. The United States Registration for Plaintiff's NARUTO Marks is in full force and effect.

74.    On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's NARUTO Marks and are willfully infringing and intentionally using counterfeits of Plaintiff's NARUTO Marks.

75.    Defendants' willful, intentional and unauthorized use of Plaintiff's NARUTO Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products among the general public.

76.    Defendants are using marks or symbols in commerce that are likely to cause confusion, or to cause mistake, or to deceive, and likely to cause purchasers and potential purchasers to falsely believe that Defendants' goods are sponsored by, approved by, or affiliated with Plaintiff, or that Plaintiff's goods are sponsored by, approved by, or affiliated with Defendants.

77. Defendants are using in commerce marks or symbols that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's NARUTO Marks, and the unauthorized use of Plaintiff's NARUTO Marks by Defendants in commerce is likely to cause damage and other irreparable injury to Plaintiff unless such use is enjoined by this Court, Plaintiff having no adequate remedy at law.

78. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are currently still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's NARUTO Marks without Plaintiff's permission.

79. Defendants' use of marks in commerce that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's NARUTO Marks constitutes willful trademark infringement of Plaintiff's rights in and to its federally registered Trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

80. After a reasonable opportunity for further investigation and discovery, it is likely the evidence will show that Defendants' aforesaid acts have been and are being committed with knowledge of Plaintiff's NARUTO Marks, and that such acts are likely to cause confusion, or to cause mistake, or to deceive. Defendants' acts are therefore intentional, willful, and are maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

81. In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based upon the nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to reasonable attorneys' fees, treble damages, and/or enhanced profits.

27

82.    Plaintiff is further entitled to an award of three times its damages or Defendants' profits for those Defendants found to be intentionally using a counterfeit mark, pursuant to 15 U.S.C. § 1117(b).

83.    Alternatively, Plaintiff may elect at any time before judgment to recover, instead of actual damages or profits, an award of statutory damages of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale.

84.    Plaintiff has no adequate remedy at law and has been or is likely to be irreparably damaged by Defendants' use of counterfeit and/or infringing marks in the United States and will continue to be irreparably damaged unless such use is immediately and permanently enjoined by this Court. Furthermore, Plaintiff has a strong likelihood of success on the merits of its claims, given the clear and willful infringement of Plaintiff's NARUTO Marks by Defendants, which justifies the grant of injunctive relief.

## COUNT III
## FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

85.    Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

86.    Defendants' promotion, marketing, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

87.    By using the Plaintiff's NARUTO Marks in connection with the Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing Products.

88.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

89.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its trademark.

90.    Plaintiff submits that the balance of hardships strongly favors granting injunctive relief. While Defendants face minimal burden in ceasing their infringing activities, Plaintiff continues to suffer significant economic harm and reputational damage from the unauthorized sale of Infringing Products. The proposed injunctive relief merely requires Defendants to stop selling Infringing Products, which imposes no undue hardship, whereas continued infringement causes substantial and irreparable harm to Plaintiff's business and brand reputation. Furthermore, granting injunctive relief would serve the public interest by protecting consumers from confusion and deception, and by maintaining the integrity of the marketplace.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)    Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following actions. Given that Defendants operate online storefronts and have the ability to control their product listings and sales activities, they have the capacity to comply with the proposed injunctive relief without undue burden

(a)    using Plaintiff's NARUTO Marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution,

29

marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's Product or is not authorized by Plaintiff to be sold in connection with Plaintiff's NARUTO Marks;

(b)     passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff, which is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's NARUTO Marks;

(c)     committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

(d)     manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's NARUTO Marks, including any reproductions, counterfeit copies, or colorable imitations thereof.

(e)     Reproducing, distributing, publicly displaying, and preparing derivative works based upon the Copyrighted Works;

(f)     making, using, offering to sell, selling, and importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Works;

30

(g)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(h)    aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's copyrights in Plaintiff's Copyrighted Works or Plaintiff's trademarks for the NARUTO Marks.

(1)    Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of any of Plaintiff's Copyrighted Works and/or Plaintiff's NARUTO Marks.

(2)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

(a)    Locate all accounts connected to Defendants;

(b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(3)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings

and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

        (a)     Locate all accounts connected to Defendants;

        (b)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

        (c)     Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(1)     Awarding Plaintiff statutory damages based on Defendants' willful trademark infringement, pursuant to 15 U.S.C. § 1117(c)(2), in an amount of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale, per Defendant;

(2)     Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(3)     Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's NARUTO Marks and/or Copyrighted Works as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(4)     Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(5)     Awarding Plaintiff any and all other relief that this Court deems just and proper

32

Date: June 5, 2026                                          Respectfully submitted,

                                                            */s/ Keaton Smith*
                                                            Keaton Smith IL #6347736
                                                            **WHITEWOOD LAW PLLC**
                                                            57 West 57th Street, 3rd and 4th Floors
                                                            New York, NY 10019
                                                            Telephone: (872) 294-3799
                                                            Email: ksmith@whitewoodlaw.com

                                                            *Counsel for Plaintiff*