IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TV TOKYO CORPORATION,<br>*Plaintiff*,<br>v.<br>SCHEDULE A DEFENDANTS,<br>*Defendants*. | Civil Action No. 2:26-cv-1230<br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff TV Tokyo Corporation ("TV Tokyo") "is a leading Japanese content producer and broadcaster of movies and videos with particular strength in animation and is headquartered … in Japan. Plaintiff develops, markets, and distributes NARUTO-branded television series and theatrical films worldwide and globally manages the licensing of NARUTO-branded products and services worldwide …." (ECF No. 1, p. 2). TV Tokyo has alleged that it is the owner and sole rights holder in multiple works. It has registered three episodes of the hit NARUTO animated TV series, which features characters and elements unique to the NARUTO universe, with the United States Copyright Office under registrations PA-2-277-887, PA 2-431-062, and PA-2-276-002 (collectively, the "Copyrighted Works"). (*Id.* at 3-7); (ECF No. 1-1). TV Tokyo is also the exclusive licensee of U.S. Trademark Registration Nos. 3,229,574 and 3,726,754 (the "NARUTO Marks"). (*Id.* at 7-9); (ECF No. 1-1). TV Tokyo manufactures and sells products through its own online webstores and licenses the use of the NARUTO Marks and Copyrighted Works to a limited number of manufacturers of products that are sold online around the world. After conducting an online investigation and discovering that the named defendants were selling infringing products

that displayed the NARUTO Marks and Copyrighted Works, TV Tokyo commenced this action. (ECF No. 1).

The Court granted a temporary restraining order on June 11, 2026. (ECF No. 24). A hearing on TV Tokyo's preliminary injunction request was held on July 7, 2026, and the Court issued a Preliminary Injunction Order against all non-appearing defendants. (ECF Nos. 47 and 48). Represented by counsel, Defendant Doe # 15, (dokidokicosplay, hereinafter "DokiDoki"), appeared at the July 7, 2026, hearing and challenged the injunction. (ECF No. 47). As a result, it was not included in the July 7, 2026, Preliminary Injunction Order. (ECF No. 48, p. 1). DokiDoki filed a brief in opposition to TV Tokyo's motion for a preliminary injunction. (ECF No. 52). On August 6, 2026, the Court entered a Preliminary Injunction Order as to DokiDoki. (ECF No. 68). Now pending before the Court is DokiDoki's motion to dismiss TV Tokyo's complaint. (ECF No. 79). DokiDoki argues that TV Tokyo failed to effectuate proper service and to state a claim. For the following reasons, the Court will deny DokiDoki's motion.

## I. ANALYSIS

### A. DokiDoki was properly served.

The Constitution requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)") governs the service of process on foreign defendants. It provides:

> (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> > (C) unless prohibited by the foreign country's law, by:
> >
> > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > >
> > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f)(3).

The Court exercised its discretion and authorized alternative service on all defendants because TV Tokyo was unable to locate their addresses despite diligent efforts. (ECF Nos. 5, 6, and 13). It is evident that defendants operate via the internet and rely on electronic communications for the operation of their businesses. The Court found that service by email and website publication was reasonably calculated to apprise the defendants, including DokiDoki, of the pendency of this action and afford them an opportunity to present their objections. (ECF No. 13). Service by email and website publication upon authorization of the Court is permissible under Rule 4(f)(3), provided it is not prohibited by international agreement.

DokiDoki contends that China is a signatory to the Hague Service Convention, but has objected to Article 10, which would permit service by "postal channels." As such, it argues that

service by mail, including email, is foreclosed. The Court rejects this position. As the district court held in *Vaswani, Inc. v. Manjunathamurthy, et al.,* Civil Action No. 2:20-cv-20288, 2021 WL 1541071, *4 (D.N.J. April 19, 2021), email does not fall within the term "postal channels" as used in the Hague Convention. As such, even when a defendant's home country objected to Article 10, "email service is not barred by international agreement." *Id.*

Moreover, even if email service was foreclosed by China's rejection of Article 10 of the Hague Convention, DokiDoki's objection would still fall short because the Hague Convention is, by its own terms, inapplicable. It does not apply when the address of the person to be served is unknown. *See* Hague Convention, Art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."). *See also United States v. 200 Acres of Land*, 773 F.3d 654, 659 (5th Cir. 2014) (recognizing that the Hague Convention does not apply when a defendant's address in unknown). In this case, TV Tokyo requested alterative service because it did not know defendants' addresses. The Court granted that request in light of the fact that DokiDoki, as well as its fellow Schedule A defendants, operates as electronic storefronts without evident physical addresses. Indeed, even in its pleadings in support of its motion to dismiss, DokiDoki omits any mention of its physical address. In a prior pleading, it informed the Court that it is "based in Hangzhou, China." (ECF No. 52, p. 2). In an instance like this, where TV Tokyo reasonably lacked information about the defendants' addresses for traditional service, the Hague Convention does not apply.

TV Tokyo effectuated service on all defendants in accordance with the Court's Order. (ECF Nos. 27, 28, and 40). The alternative method of service was successful in effectuating actual notice of these proceedings as evidenced by the fact that DokiDoki appeared and presented its objections to Plaintiff's request for a preliminary injunction and challenge to Plaintiff's claims.

The Court holds that TV Tokyo effectuated legally sound service against DokiDoki pursuant to Rule 4(f)(3). The service of the summons was sufficient, as explained above, to subject DokiDoki to personal jurisdiction in the Court.

**B. Plaintiff has brought viable claims against DokiDoki.**

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a

plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

To establish copyright infringement, TV Tokyo must demonstrate (1) ownership of a valid copyright and (2) that a defendant copied the copyrighted work's original and protected aspects. *Grondin v. Fanatics, Inc.*, No. 23-2149, 2024 WL 523119, at * 1 (3d Cir. Dec. 27, 2024) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The element of copying has two components: (a) actual copying and (b) material appropriation. *Grondin*, 2024 WL 523119, at * 1 (citing *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018)). Actual copying focuses on whether the defendant used the copyrighted work in creating its own. *Tanksley*, 902 F.3d at 173. Irrespective of similarity, no infringement has occurred when a defendant has truly created its own work independently. *Id.* On the other hand, even subconscious copying of a protected work is no defense. *Id.* When a protected work has been copied, a court considers whether the copyrighted work and its alleged infringer are "substantially similar" from the viewpoint of a lay observer. *Id.* at 174. To answer whether two works are substantially similar, the trier of fact performs a side-by-side comparison of the works. *Id.*

The Court remains firm in its position that TV Tokyo has stated a plausible claim against DokiDoki. TV Tokyo adequately pled that the Copyrighted Works – i.e., three episodes of the hit NARUTO animated TV series, which feature characters and elements unique to the NARUTO universe – are registered with the United States Copyright Office under registrations PA-2-277-887, PA 2-431-062, and PA-2-276-002, and that it is also the exclusive licensee of the NARUTO marks as evinced by U.S. Trademark Registration Nos. 3,229,574 and 3,726,754. (ECF No. 1, pp. 3-9); (ECF No. 1-1). The Court holds that TV Tokyo has adequately pled that the infringing product sold by DokiDoki is a replica of a copyright-protected jacket found throughout the entire

NARUTO series, including each episode covered by TV Tokyo's asserted copyrights. As the Court explained in its Order entering an injunction against DokiDoki:

> With respect to DokiDoki, TV Tokyo alleges infringement of a spiral or "swirl" mark that appears throughout the "NARUTO universe." (ECF No. 57, p. 7). According to TV Tokyo, this mark is related to the Japanese term "uzumaki," which means "swirl, eddy, or whirlpool." (*Id.*). In the television series, it appears on the clothing of Naruto and other characters. (*Id.*). Notably, it appears on a distinctive jacket/vest within the series, and TV Tokyo alleges that this jacket is basically identical to the one offered for sale on DokiDoki's website. (*Id.* at 6–7). DokiDoki counters, arguing that the "basic red spiral" that TV Tokyo claims as copyright material is a minimally original mark. (ECF No. 52, p. 5). Thus, as a generic or "thin" symbol, DokiDoki argues that it is not entitled to copyright protection. (*Id.*).
>
> Here, the Court has reviewed screenshot evidence from the Naruto television series of the red spiral on the back of a character's jacket, as well as screenshot evidence from the allegedly infringing online marketplace. (ECF No. 21, p. 16). Those red spirals undoubtedly share substantial similarities of color, shape, orientation, and depiction, especially with respect to DokiDoki's use of the red spiral symbol on the jacket in the same manner that it is depicted in the television show. A lay observer, unless having set out to detect any disparities in the two works, would regard their aesthetic appeal as the same. *See Tanksley*, 902 F.3d at 174. Contrary to DokiDoki's assertions that the red spiral at issue is an ordinary and unprotectable mark, TV Tokyo has demonstrated that the red spiral is an original work of authorship fixed in a tangible medium of expression. *See Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 219 (3d Cir. 2019).

(ECF No. 68, pp. 5-6). There is no question that TV Tokyo has stated a plausible claim for relief against DokiDoki.

## II. CONCLUSION

For the aforementioned reasons, DokiDoki's motion will be denied by Order of Court to follow.

BY THE COURT:

[signature]

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 10/7/26